# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| B. S. G., | : |
| Plaintiff, | : |
| v. | : Case No. 5:18-cv-307-MTT-CHW |
| COMMISSIONER OF SOCIAL SECURITY, | : Social Security Appeal |
| Defendant. | : |

## ORDER

Plaintiff B.S.G. seeks judicial review of a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Upon review of the record, the Commissioner's decision is **AFFIRMED**.

## BACKGROUND

Plaintiff B.S.G. filed for disability insurance benefits (DIB) and supplemental security income benefits (SSI) in May 2014, alleging disability beginning on June 1, 2011. (Admin. Tr., Doc. 11-5, pp. 1, 9). DIB eligibility requires a claimant to "demonstrate[] disability on or before the last date for which she [was] insured." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing 42 U.S.C. § 423(a)(1)(A)). Plaintiff's date last insured is December 31, 2011. (Admin. Tr., Doc. 11-2, p. 14). Noting that none of Plaintiff's medical evidence predates 2014, the Commissioner found that Plaintiff "fail[ed] to establish the existence of any medically determinable impairment prior to the date last insured." (*Id.*, p. 15). Plaintiff does not challenge that finding by the Commissioner before this Court.

1

Plaintiff claims to be disabled due to the following impairments: chronic obstructive pulmonary disease (COPD); chronic lower back pain; borderline intellectual functioning; and depression, with associated symptoms such as irritability, diminished social functioning, and diminished concentration. (Pl.'s Br., Doc. 16, p. 4). Plaintiff's arguments to the Court focus on her asserted psychological impairments.

After Plaintiff's disability applications were denied initially and on reconsideration at the state-agency level of review (Admin. Tr., Doc. 11-4, pp. 2, 5, 15, 19), Plaintiff requested a hearing and the opportunity for further review before an administrative law judge ("ALJ"). At her hearing, Plaintiff testified that her back pain and depression arose from a traffic accident Plaintiff suffered "approximately 30 years ago" (Admin. Tr., Doc. 11-7, p. 47), while she was three months pregnant. (Admin. Tr., Doc. 11-2, p. 54). Plaintiff claims that her depression worsened in 2011 upon the death of her "partner[] for better than 16 years." (*Id.*, p. 57).

In October 2017, the ALJ issued an opinion finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.*, pp. 11–28). The ALJ found that Plaintiff "retained most of her functionality despite her mental conditions." (*Id.*, p. 26). In support of this finding, the ALJ cited the opinion of Dr. Scott Duncan, a consultative psychological examiner who concluded that Plaintiff "would not be limited in her daily adaptive functioning because of mental health issues." (*Id.*, p. 23). *See* (Admin. Tr., Ex. 8F). The ALJ further found that treatment notes, primarily from Southside Medical Center, evidenced "significant improvement of the claimant's depressive symptoms." (Admin. Tr., Doc. 11-2, p. 22). Plaintiff subsequently sought to appeal the ALJ's unfavorable decision, but in June 2018, the Appeals Council denied review in Plaintiff's case. (*Id.*, p. 2).

Plaintiff now seeks judicial review before this Court on the following two grounds. First, Plaintiff argues that the ALJ erred by declining to credit different medical evidence from (a) Dr. Gary Kittrell, another consultative psychological examiner (Admin. Tr., Ex. 2F), and (b) Dr. John Cooper and Dr. David Massey, two state-agency medical reviewers. *See* (Admin. Tr., Doc. 11-3, pp. 10–12, pp. 39–41). Second, Plaintiff argues that the ALJ erred by discounting Plaintiff's description of her own symptoms, as well as the corroborating report of Ms. Kathy Loyd, Plaintiff's friend and roommate. (Admin. Tr., Ex. 16E).

As discussed below, ALJ adequately articulated her rationale both for discounting Plaintiff's description of her symptoms, and also for crediting some of the medical records over others. Substantial evidence supports the ALJ's stated rationale, and therefore, Plaintiff's arguments provide no basis for altering the Commissioner's decision.

## STANDARD OF REVIEW

In social security appeals, the Court is tasked with determining "whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations omitted). The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the Commissioner. *Id.*

While the Commissioner's legal conclusions are subject to *de novo* review, the Commissioner's factual findings "are conclusive if supported by substantial evidence." *Ingram v. Comm'r*, 496 F.3d 1253, 1260 (11th Cir. 2007). Substantial evidence, in turn, means "more than a scintilla" of evidence, or "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178.

3

Accordingly, as to factual findings, the Court must affirm "[e]ven if the evidence preponderates against" the Commissioner's decision. *Ingram*, 496 F.3d at 1260.

## EVALUATION OF DISABILITY

Social security claimants are "disabled" within the meaning of the Social Security Act if they are unable to engage in "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

"The Social Security Regulations outline a five-step, sequential evaluation process for determining whether a claimant is disabled." *Winschel*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)). Those five steps are: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178.

## MEDICAL RECORD

The available medical record in this case consists predominantly of treatment notes from Plaintiff's regular visits to Southside Medical Center from May 2014 through January 2017. (Admin. Tr., Exs. 1F, 5F, 7F, 10F, 11F, 13F). Early records show a concern

4

regarding a cough Plaintiff developed, (Admin. Tr., Doc. 11-7, p. 5), but contemporaneous medical imaging of Plaintiff's lungs revealed "no evidence of pleural effusions." (*Id.*, p. 40). The record similarly shows that Plaintiff also complained of lower back pain, although medical imaging revealed no abnormal findings as to the apparent source of Plaintiff's pain, her pelvis. (*Id.*, p. 39). As to her back pain generally, Plaintiff was advised on the "importance of weight loss [and] a regular exercise program." (*Id.*, p. 48). The record indicates that Plaintiff managed her back pain with over-the-counter medication. (*Id.*, p. 47).

Plaintiff's Southside Medical Center records show recurring reports of depression and insomnia. As the ALJ accurately noted, those records give no suggestion that Plaintiff was ever hospitalized for mental health issues. (Admin. Tr., Doc. 11-2, p. 16). The record indicates that Plaintiff initially benefited from treatment with citalopram (Celexa) until late 2014 or 2015, when Plaintiff reported side effects such as "nightmares" and "hearing voices." (Admin. Tr., Doc. 11-7, p. 47). Plaintiff's citalopram prescription was then discontinued in favor of venlafaxine (Effexor). (*Id.*).

The overall medical record indicates that this medication change had a beneficial effect. One subsequent treatment note from October 2015 describes Plaintiff's "functioning as very difficult." (Admin. Tr., Doc. 11-8, p. 6). Thereafter, a record from May 2016 reports that Plaintiff demonstrated symptoms such as "depressed mood, difficulty concentrating, [and] difficulty falling asleep." (*Id.*, p. 37). That same record, though, specifically states: "the effexor works well for her[,] she is not depressed when she has her medication." (*Id.*). Furthermore, numerous other Southside Medical Center records report that Plaintiff's "[s]ymptoms [were] well controlled," (*Id.*, pp. 12, 40, 43, 77), or were

5

"improved," (*Id.*, pp. 16, 31, 65), and these other reports describe Plaintiff's functioning as "not difficult at all." (*Id.*, pp. 16, 31, 65).

The remaining medical evidence consists of the opinions of two consultative psychological examiners, Dr. Gary Kittrell, and Dr. Scott Duncan. (Admin. Tr., Exs. 2F, 8F). Dr. Kittrell examined Plaintiff prior to her medication change, s*ee* (Admin. Tr., Doc. 11-7, p. 26) ("she … is currently prescribed Celexa"), and concluded that Plaintiff would have a "moderate to marked difficulty following through with directives," "episodic difficulty dealing effectively with supervision and coworkers as well as dealing with the public," and a "low average ability to concentrate with an overall low average cognitive pace." (*Id.*, pp. 30–31). Dr. Kittrell's findings are not exclusively negative. For example, Dr. Kittrell also found that Plaintiff "should be able to understand and remember basic instructions," and that her "social skills seemed adequate for most work settings." (*Id.*). Based, perhaps, on these other findings, two state-agency medical reviewers, Dr. John Cooper and Dr. David Massey, both adopted Dr. Kittrell's findings, and also concluded that Plaintiff was not disabled. (Admin. Tr., Doc. 11-3, pp. 10–12, 39–41).

The later consultative report of Dr. Scott Duncan, rendered after Plaintiff's medication change, concluded that Plaintiff had no mental health symptoms apart from volitional alcohol abuse. (Admin. Tr., Doc. 11-7, p. 74). Dr. Duncan also expressly found that Plaintiff could "maintain[] attention and sustained concentration," would "not have marked trouble understanding and recalling simple directives," and would "have no difficulty meeting expected job requirements consistently due to emotional problems. (*Id.*).

**DISABILITY EVALUATION IN PLAINTIFF'S CASE**

Following the five-step sequential evaluation procedure, the ALJ made the following findings in Plaintiff's case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since at least June 1, 2011, her alleged onset date. (Admin. Tr., Doc. 11-2, p. 14). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "Asthma, Chronic Obstructive Pulmonary Disease (COPD); Obesity; Borderline Intellectual Functioning; Adjustment Disorder with Mixed Anxiety and Depressed Mood; Alcohol Abuse; and History of Back Pain." (*Id.*). The ALJ also found that Plaintiff suffered from hypertension, but the ALJ determined that Plaintiff's hypertension was not severe because it was "controlled with medication." (*Id.*, p. 15).

At step three of the sequential evaluation procedure, the ALJ found that Plaintiff's impairments, both singly and in combination, did not meet or equal any of the impairments specified in the Listing of impairments. (*Id.*). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. Therefore, the ALJ assessed Plaintiff's RFC and found that Plaintiff could perform "medium work," with the following additional limitations:

> The claimant must avoid concentrated exposure to dust, fumes, and pulmonary irritants and hazards. She is limited to simple and routine tasks with short instructions and simple work-related decisions. She should have gradual and infrequent workplace changes.
>
> (Admin. Tr., Doc. 11-2, p. 18)

Based on this RFC finding, the ALJ determined, at step four of the sequential evaluation procedure, that Plaintiff was unable to perform her past relevant work as an "inspector." (*Id.*, p. 26). *See also* (*Id.*, p. 59) (describing Plaintiff's inspection work for Williamston Manufacturing Corporation). At step five, however, the ALJ found that Plaintiff

7

could make an adjustment to other work. (*Id.*, p. 27). Specifically, the ALJ found that Plaintiff could perform the requirements of the following representative occupations: "packer," "golf range attendant," and "laundry worker I." (*Id.*). Accordingly, based on her step-five findings, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff raises two arguments in her appeal. First, Plaintiff argues that the ALJ erred by discounting the opinions of Dr. Gary Kittrell, a consultative examiner, and of Dr. John Cooper and Dr. David Massey, two state-agency medical reviewers. According to Plaintiff, these medical sources proposed mental limitations to Plaintiff's residual functional capacity that the ALJ erred in rejecting. Second, Plaintiff argues that the ALJ erred by discounting Plaintiff's own description of her symptoms, along with a corroborating description by Plaintiff's friend and roommate, Ms. Kathy Loyd. For the reasons discussed below, the record fails to support Plaintiff's arguments. Accordingly, the Commissioner's decision is affirmed.

### I. Substantial Evidence Supports the ALJ's Decision to Discount the Opinions of Dr. Kittrell, Dr. Cooper and Dr. Massey

Plaintiff's primary argument is that the ALJ erred by partially rejecting the opinion of Dr. Gary Kittrell, a consultative psychological examiner who found that Plaintiff would suffer from "moderate to marked difficulty following through with directives," "episodic difficulty dealing effectively with supervis[ors] and coworkers as well as … the public," and "a low average ability to concentrate with an overall low average cognitive pace." (Admin. Tr., Doc. 11-7, pp. 30–31). Dr. Cooper and Dr. Massey, upon review of Plaintiff's

8

medical record, adopted Dr. Kittrell's proposed limitations, while also concluding that Plaintiff was not disabled. (Admin. Tr., Doc. 11-3, pp. 10–12, pp. 39–41). The ALJ assigned "little weight" to Dr. Kittrell's opinion (Admin. Tr., Doc. 11-2, p. 21) and discounted the portions of Dr. Cooper and Dr. Massey's opinions that adopted Dr. Kittrell's proposed "additional social restrictions." (*Id.*, p. 23). Plaintiff argues that the ALJ erred by discounting, in relevant part, these non-treating doctors' opinions.

Contrary to Plaintiff's argument, substantial evidence supports the ALJ's decision to discount Dr. Kittrell's opinion, and to discount the corresponding portions of the opinions of Dr. Cooper and Dr. Massey. *See, e.g.*, *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting that reviewing courts are precluded from "deciding the facts anew, making credibility determinations, or re-weighing the evidence"). As noted by the ALJ, a different consultative psychological examiner, Dr. Scott Duncan, concluded that Plaintiff "did not have difficulty with effectively maintaining attention and sustained concentration," "would be able to take and carry out directives with no marked difficulties," and "did not appear to have difficulty relating to people due to a mental illness." (Admin. Tr., Doc. 11-7, p. 74). These different findings by Dr. Duncan, to which the ALJ assigned "significant weight," clearly support the ALJ's residual functional capacity finding. (Admin. Tr., Doc. 11-2, p. 23).

In opting to credit Dr. Duncan's opinion over the opinions of Dr. Kittrell, Dr. Cooper and Dr. Massey, the ALJ explained: "[t]reatment records and clinical findings of a treating source physician and other treating healthcare providers include numerous unremarkable findings." (*Id.*). The supporting citations provided by the ALJ amply substantiate her characterization of the record. Specifically, treatment notes from Southside Medical

9

Center contain numerous findings that Plaintiff's symptoms were "relieved" or "well controlled on current dose with no negative side effects." (Admin. Tr., Doc. 11-8, pp. 12, 43, 61, 77). Other records show findings of "improvement" and note reports from Plaintiff that her "functioning [was] not difficult at all." (*Id.*, pp. 16, 31, 65). Still further records state that Plaintiff was "not depressed when she has her medication." (*Id.*, pp. 22, 37, 71).

At the very least, the Southside Medical Center records amount to "substantial evidence" supporting the ALJ's decision to credit Dr. Duncan's opinion over the opinions of Dr. Kittrell, Dr. Cooper and Dr. Massey. As a result, particularly in light of the "highly deferential standard of review," *Powell v. Astrue*, 250 F. App'x 960, 963 (11th Cir. 2007), the ALJ did not err in her treatment of the medical evidence.

## II. Substantial Evidence Supports the ALJ's Treatment of Plaintiff's Description of Symptoms, and Kathy Loyd's Corroborating Description

For much the same reason, the ALJ also did not err by discounting both (a) Plaintiff's description of her own symptoms, and (b) corroborating remarks made by Ms. Kathy Loyd, Plaintiff's friend and roommate.

In support of her argument that the ALJ so erred, Plaintiff cites two social security regulations, SSR 16-3p and SSR 06-03p, that provide guidance for assessing a claimant's description of her own symptoms, and for assessing similar descriptions by "other sources," including non-medical sources who are familiar with a claimant's functioning. (Pl.'s Br., Doc. 16, pp. 12–20). Plaintiff argues that the ALJ violated these regulations by not "explaining the reasons" for discounting both Plaintiff's reports of her own symptoms and also by discounting Ms. Loyd's corroborating written report. (Admin. Tr., Ex. 16E). These reports indicate that Plaintiff's symptoms caused a drastic

functionality loss "[p]robably three to four days a week," (Admin. Tr., Doc. 11-2, p. 58), or in Ms. Loyd's words: "It is very hard for [Plaintiff] to complete the day without relying on me for many normal activities." (Admin. Tr., Doc. 11-6, p. 81).

Contrary to Plaintiff's argument, the ALJ adequately articulated sufficient reasons supported by substantial evidence for discounting Plaintiff's report as to the "intensity, persistence and limiting effects" of her own symptoms. (Admin. Tr., Doc. 11-2, p. 25). With regard to Plaintiff's complaints of back pain and poor respiration, the ALJ cited evidence of unremarkable medical imaging studies and expressly found that Plaintiff generally had "received routine and conservative treatment." (*Id.*, p. 25). The record supports this finding by the ALJ.

As to Plaintiff's mental health impairments, particularly as to her depression, the ALJ cited numerous exhibits from Southside Medical Center that, as discussed above, support the ALJ's conclusion that Plaintiff "retained much if not most of her functionality." (*Id.*) (citing 1F, 5F, 10F, 11F). The ALJ also accurately noted that Plaintiff had "never been hospitalized for mental health issues". (Admin. Tr., Doc. 11-2, p. 26). Finally, the ALJ expressly credited the consultative report of Dr. Scott Duncan, which supports the ALJ's conclusion that Plaintiff "would not be limited in her daily adaptive functioning because of mental health issues." (*Id.*, p. 23). For all of these reasons, the ALJ adequately articulated sufficient grounds supported by substantial evidence for discounting Plaintiff's description of her own symptoms. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court"). Hence, the ALJ did not err by discounting Plaintiff's description of her own symptoms.

By contrast, the ALJ did not similarly articulate reasons to discount Ms. Loyd's third-party report, and this Court finds no legal authority supporting the Government's contention that the ALJ "was not required to articulate specific reasons for discounting Loyd's statements."[1] (Comm'r Br., Doc. 19, p. 12). Nevertheless, because Ms. Loyd's report is merely duplicative of Plaintiff's testimony, the ALJ's error in failing to explain her rationale is harmless. The same rationale that justified discounting Plaintiff's description of her own symptoms also supports the ALJ's implicit rejection of Ms. Loyd's report. *See, e.g.*, *De Olazzabal v. Comm'r*, 579 F. App'x 827, 832 (11th Cir. 2014) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). Therefore, the ALJ's treatment of both Plaintiff's description of her own symptoms, as well as Ms. Loyd's description of Plaintiff's symptoms, provides no basis to alter the decision below.

## **CONCLUSION**

After a careful review of the record, the Court concludes that substantial evidence supports the ALJ's treatment of the medical evidence. Substantial evidence also supports the ALJ's decision to discount Plaintiff's description of her own symptoms, along with the corroborating description provided by Ms. Kathy Loyd. Accordingly, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED**, this 11th day of September, 2019.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[1] *Cf.* SSR 06-03p, 2006 WL 2329939 at *6 ("the adjudicator generally should explain the weight given to opinions from … 'other sources,' or otherwise ensure that the discussion of the evidence … allows a claimant or subsequent reviewer to follow the adjudicator's reasoning").